**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 97-KA-00591-SCT**

*JERRY SWINGTON a/k/a JERRY LEWIS SWINGTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/12/97 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | A. RANDALL HARRIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | DUNN LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/17/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/8/99 |

**BEFORE PRATHER, C.J., MILLS AND COBB, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Jerry Swington appeals his conviction and sentence in the Pike County Circuit Court of unlawful possession of cocaine with intent to distribute within 1500 feet of a church and his adjudication as a habitual offender, in violation of Miss. Code Ann. § § 41-29-139, -142 & -147 (1993), and Miss. Code Ann. 99-19-81 (1994). Finding no error, this Court affirms the judgment of the trial court.

## STATEMENT OF THE FACTS

¶2. On October 11, 1996, Agent Kenneth Hicks of the Pike County Sheriff's Department, with the assistance of Agent Erik Allen, Investigator Robert Holmes, Deputy Dewayne Varnado, Officer Tadlock, and Officer Mark Anderson, conducted a controlled drug buy on the streets of McComb, Mississippi. The officers were in a van approaching the intersection of St. Augustine and Summit Street when they saw Antron Reed standing on the corner. Agent Hicks pulled the van to the curb and asked Reed if he knew where they could get "a twenty". Reed replied that he could get a twenty for them. He then went to Lumpkin's Café and returned with a rock of crack cocaine for which Hicks gave him twenty dollars. Hicks asked Reed if he could get some more cocaine. Reed replied affirmatively at which point Hicks directed his

fellow officers to arrest Reed.

¶3. Upon being questioned as to the source of the cocaine, Reed confessed that Jerry Swington had provided him with the cocaine to sell and he was waiting in Lumpkin's Café for Reed to return with the money. He testified that he acted as a go-between for Swington because Swington is a quadriplegic. Additionally, he told the officers that the cocaine was on the table in front of Swington underneath a newspaper.

¶4. The officers entered Lumpkin's Café and found Swington sitting at a table with a newspaper on it. Officer Holmes picked up the paper and found a rock of cocaine on the table. Swington told Holmes that the rock was not his, that it belonged to Roy Lee. Holmes testified that the only Roy Lee he knew was in Parchman for selling cocaine and that he was in Parchman on the day in question. Swington was sitting at the table alone, and no one in the café was near him. Reed testified at trial that he had a deal with Swington where he would sell the crack for Swington and he could keep some for himself. Reed admitted that he was addicted to cocaine.

¶5. In the face of the evidence against him, Jerry Swington denies that the crack cocaine found underneath the newspaper belonged to him. He argues that the fact that the officers found cocaine on the table at which he was sitting does not amount to constructive possession and that he did not know that the cocaine was there, although when Officer Holmes revealed the cocaine beneath the newspaper, Swington told him that it belonged to Roy Lee. He asserts that the only evidence against him is that of a self-professed cocaine addict who admitted to having been under the influence of drugs three days prior to trial.

¶6. It is Swington's position that Antron Reed is lying. His theory is that, upon being arrested by the police and faced with the pressure to reveal his supplier, Reed became frightened of the consequences that would befall him if he were to "rat out" his real supplier. Therefore, in order to protect himself, he told the officers that his supplier was Jerry Swington, a quadriplegic.

¶7. On March 10, 1997, the jury of the Pike County Circuit Court found Jerry Swington guilty of possession of cocaine with intent to distribute. Subsequently, on March 12, Swington was sentenced into the custody of the Mississippi Department of Corrections for sixty years without the benefit of reduction, suspension, probation, or parole. He was ordered to pay a fine in the amount of $100,000 and attorney fees and court costs, as well. Aggrieved, Swington appeals to this Court assigning as error the following issues:

> **I. THE LOWER COURT ERRED IN ALLOWING INTO EVIDENCE A SIMILAR INCIDENT OF DRUG DISTRIBUTION WITHOUT FIRST DETERMINING THE VALIDITY OF THE OTHER CRIMES EVIDENCE AND BY ERRONEOUSLY DETERMINING THAT SUCH EVIDENCE WAS MORE PROBATIVE THAN PREJUDICIAL.**
>
> **II. THE LOWER COURT ERRED IN ALLOWING ADMISSION OF A PRIOR CONVICTION SIMILAR TO THE CHARGE IN THE INDICTMENT.**
>
> **III. THE STATE VIOLATED DISCOVERY RULES BY FAILING TO SUPPLEMENT A PREVIOUSLY DISCLOSED STATEMENT BY ITS STAR WITNESS AND THE LOWER COURT ERRED IN FAILING TO FIND THAT A VIOLATION OCCURRED.**

**IV. SWINGTON WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL THE LOWER COURT ERRED IN DENYING SWINGTON'S PEREMPTORY INSTRUCTION.**

**V. THE LOWER COURT ERRED IN DENYING SWINGTON'S PEREMPTORY INSTRUCTION.**

## DISCUSSION

### I. DID THE LOWER COURT ERR BY ALLOWING THE STATE TO PRESENT EVIDENCE OF A SIMILAR DRUG TRANSACTION THAT OCCURRED PRIOR TO THE TRANSACTION IN QUESTION?

¶8. During the testimony of Antron Reed, the attorney for the State made a proffer of evidence allowing the court an opportunity to evaluate the evidence and its admissibility. The evidence sought to be admitted showed that Reed had made an additional sale of cocaine just prior to being arrested for the sale in question. Swington objected to admission of the evidence on the basis of unfair surprise in violation of the rules of discovery. However, on appeal to this Court he argues that the evidence was admitted improperly and in violation of M.R.E. 404(b).

¶9. An objection on one specific ground waives all other grounds. *Doss v. State*, 709 So. 2d 369, 387 (1997) (*citing* **Conner v. State**, 632 So.2d 1239, 1255 (Miss.1993) overruled on other grounds, *Weatherspoon v. State*, 1999 WL 12828 (Miss. Jan 14, 1999) (NO. 97-KA-00019-SCT)). This Court explained the underlying bases for the existence of a contemporaneous objection rule in *Oates v. State*, 421 So.2d 1025, 1030 (1982) as follows: "There are three basic considerations which underlie the rule regarding specific objections. It avoids costly new trials. **Boring v. State**, 253 So.2d 251 (Miss.1971). It allows the offering party an opportunity to obviate the objection. **Heard v. State**, 59 Miss. 545 (Miss.1882). Lastly, a trial court is not put in error unless it had an opportunity to pass on the question. **Boutwell v. State**, 165 Miss. 16, 143 So. 479 (1932)." Swington is procedurally barred from asserting this objection for the first time on appeal. However, this Court will consider his argument in light of his claim of ineffective assistance of counsel.

*¶10.* The proffered testimony showed that Reed had made an additional sale of cocaine approximately thirty minutes prior to being arrested for selling a similar amount to the law enforcement officers. He testified that the cocaine sold in this earlier sale came from Swington also. The State claimed that, although this was evidence of a prior bad act proscribed by M.R.E. 404(b), this evidence was admissible as showing intent, motive and knowledge. Subsequent to the proffer, the State attorney argued the following:

> Your Honor, again, this testimony goes to knowledge, intent, opportunity. It shows that Mr. Swington was aware of the presence of the rocks, that he allowed a prior sale to be made and that his supply was, in fact, dwelling [sic] as the sales were made. This was, essentially, the two transactions might even be called part of a common scheme or plan. He apparently was there to get rid of what he had and was systematically getting rid of it. I will not speculate as to whether he would have sold the last one had he not been arrested, but at least the first two were sold. We think it's probative as to those issues.

¶11. After conducting a M.R.E. 403 balancing analysis, the Court admitted the evidence because of its

relevance to motive, plan, intent, and preparation in accordance with Rule 404(b). Reed then proceeded to testify before the jury with respect to the prior sale.

¶12. Mississippi Rule of Evidence 404(b) provides as follows:

> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶13. Evidence of prior involvement in the drug trade is admissible to prove intent to distribute. *Holland v. State*, 656 So. 2d 1192, 1196 (Miss. 1995). In *Smith v. State*, 656 So. 2d 95 (Miss. 1995), the defendant was convicted of possession of cocaine with intent to distribute in violation of Miss. Code Ann. § 41-29-139 (1993). This Court determined that "given the difficulty of proving subjective intent, we see no reason to categorically exclude evidence of prior sales." *Smith v. State*, 656 So. 2d at 99. Swington argues that due to the fact that the testimony regarding the prior sale came from a self-proclaimed drug addict, the testimony was not admissible. However, the fact that the testimony was elicited from the mouth of a cocaine addict is a matter affecting the credibility of the witness which is an issue to be determined by the jury. *McClain v. State*, 625 So.2d 774, 778 (Miss.1993); *United States v. Davis*, 15 F.3d 526 (6th Cir.1994) (where evidence of witness/drug addict's testimony regarding 30 to 40 prior purchases of cocaine from defendant found admissible to show intent to distribute). Additionally, this Court has held that "the uncorroborated testimony of an accomplice may be sufficient to convict an accused. Where there is slight corroborative evidence, the accomplice's testimony is likewise sufficient to sustain the verdict. However, the general rule is inapplicable in those cases where the testimony is unreasonable, self contradictory or substantially impeached." *Ballenger v. State*, 667 So.2d 1242, 1253 (Miss. 1995) (quoting *Flanagan v. State,* 605 So.2d 753, 757-58 (Miss. 1992)). Here the testimony given by Reed was neither unreasonable, self contradictory nor substantially impeached. Further, the court properly conducted a balancing analysis as required by M.R.E. 403. *Smith v. State*, 656 So.2d at 99. Finally, the court gave a limiting instruction as required by *Smith* once the evidence passed the Rule 403 hurdle. *Id.* Therefore, this Court finds that the evidence was properly admitted under M.R.E. 404(b).

## II. DID THE LOWER COURT ERR IN ALLOWING ADMISSION OF A PRIOR CONVICTION SIMILAR TO THE CHARGE IN THE INDICTMENT?

¶14. In the case *sub judice*, Jerry Swington was tried for unlawful possession of cocaine with intent to distribute. Previously, in October of 1990, he was convicted of the unlawful sale of cocaine. He argues that the trial court erred in allowing admission of the prior conviction. However, he failed to object to the admission of the evidence. Failure to make a contemporaneous objection waives the issue on appeal. *See Ratliff v. State,* 313 So.2d 386, 388 (Miss. 1975). Although Swington is procedurally barred from raising this issue, we will discuss the merits of his assertion in light of his claim of ineffective assistance of counsel.

¶15. Prior convictions or wrongful acts may not imply that the defendant is the type of person likely to commit the crime charged. *Jenkins v. State*, 507 So.2d 89, 92 (Miss.1987). However, such evidence may be admitted for other evidentiary purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident pursuant to M.R.E. 404(b). *See Robinson v. State*, 497 So.2d 440, 442 (Miss.1986). In *Smith v. State*, 656 So. 2d at 99, this Court held that "evidence of prior acts offered to show intent to distribute is not barred by M.R.E. 404 and is properly

admissible if it passes muster under M.R.E. 403 and is accompanied by a proper limiting instruction."

¶16. The trial court followed the dictates of *Smith* by first performing a Rule 403 balancing analysis and concluding that "in view of all of the circumstances, including the time and date of the sentence, I find that the probative value of admitting this sale conviction would outweigh any prejudicial effect, so we would allow the sale conviction to be introduced into evidence." The court also required a limiting instruction which stated as follows:

> The Court instructs the Jury that the testimony of Jerry Lewis Swington regarding his prior conviction for the unlawful sale of cocaine in 1990 was offered in an effort to prove motive, intent, preparation, plan, knowledge, identity or absence of mistake on the part of the defendant when he allegedly was in possession of cocaine with intent to distribute on October 11, 1996. You may give this testimony such weight and credibility as you deem proper under the circumstances.
>
> However, the Court further instructs the Jury that under the circumstances you can not and must no consider this testimony in any way regarding whether or not Jerry Lewis Swington is guilty or not guilty of the charge for which he is presently on trial, that being for the unlawful possession of cocaine with intent to distribute.

¶17. The prior conviction was properly admitted as showing intent as allowed by M.R.E. 404(b) and a proper limiting instruction was given as well. This issue is without merit.

### III. DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE PRESENTED AT TRIAL THAT WAS NOT BROUGHT TO THE ATTENTION OF THE DEFENSE IN ADVANCE OF TRIAL IN VIOLATION OF THE RULES OF DISCOVERY?

¶18. As discussed in the first issue, during the testimony of Anton Reed, the State made a proffer of evidence attempting to show the admissibility of testimony elicited from Reed concerning a sale made by him approximately thirty minutes prior to his being arrested. Swington argues that the State failed to supplement the previously disclosed statement of Reed when more information was gleaned from him in a subsequent interview. The State conceded that it had not provided the information to the defense; however the information was learned in talking with Reed just prior to trial. Counsel for Swington argued that although she did speak to Reed the week prior to trial, this particular information was not provided to her by the State. Therefore, she argued admission of the evidence would constitute unfair surprise which is in violation of the rules of discovery. The court determined that there was no written statement regarding this prior sale, and the defense was provided the name of the witness and had an opportunity to interview him and in fact did interview him. Therefore, after conducting a Rule 403 balancing analysis, the Court admitted the evidence because of its relevance to motive, plan, intent, and preparation in accordance with Rule 404(b). Reed then proceeded to testify before the jury with respect to the prior sale. The testimony elicited was as follows:

> Q. Mr. Reed, when, if ever, before you sold to Agent Hicks, when did you ever, if ever, had you sold crack for Jerry Swington?
>
> A. About 30 minutes earlier, the same night.
>
> Q. I'm sorry?

A. Thirty minutes earlier, the same night.

Q. All right. Why were you - - why did you do that? Why did you sell for him thirty minutes earlier and why did you sell to Agent Hicks?

A. I was trying to get me some crack, and I ain't have no money.

Q. Did you have some kind of agreement with Mr. Swington about what you would get out of this?

A. Yes.

Q. What was that?

A. Some crack for myself.

Q. The deal that - - when you sold thirty minutes before you sold to agent Hicks, do you know who you sold to?

A. Un -uh, not exactly.

Q. Okay. Did you get anything out of that sale?

A. Yes.

Q. What did you get?

A. Some crack.

Q. Who did you get it from?

A. From Jerry.

* * *

Q. Did Mr. -- how did Mr. Swington go about letting you know that you would get some crack cocaine out of the deal?

A. He told me.

¶19. Although Swington admitted that the defense had an opportunity to, and in fact did, question Reed prior to trial, he objected to the admission of this evidence on the basis of unfair surprise which is guarded against by UCCCR 9.04.

In *Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994), this Court stated:

*Box v. State*, 437 So. 2d 19 (Miss. 1983) (Robertson, J., specially concurring), first set forth the procedure trial courts should follow when confronted with a discovery violation. Miss. Unif. Crim. R. Cir. Ct. Prac. 4.06 [now Uniform Circuit and County Court Rule 9.04] now reflects the *Box* procedure. This procedure is equally applicable in capital cases.

When faced with previously undisclosed evidence to which the defendant has objected, the trial court

should give the defendant a reasonable opportunity to familiarize himself with the evidence. *If the defendant thereafter believes he may be prejudiced by admission of the evidence because of his lack of opportunity to prepare to meet it, he must request a continuance. Should the defendant fail to request a continuance, he has waived the issue.* If he indeed requests a continuance, the state may opt to proceed without the undisclosed evidence, else the trial court must grant the continuance. Failure to follow the ***Box*** guidelines is prejudicial error, requiring reversal and remand.

*Snelson v. State*, 704 So. 2d 452, 458 (Miss. 1997) (citations omitted).

¶20. Swington failed to request a continuance after objecting to the evidence. Therefore, this Court finds that he has waived the issue. We will now address the ramifications of Swington's counsel's failure to request an interview or continuance as it applies to his claim of ineffective assistance of counsel.

### IV. WAS SWINGTON DENIED EFFECTIVE ASSISTANCE OF COUNSEL?

¶21. This issue was raised by Swington for the first time on appeal to this Court. However, "[a]ny defendant convicted of a crime may raise the issue of ineffective assistance of counsel on direct appeal, even though the matter has not first been presented to the trial court." ***Read v. State***, 430 So.2d 832, 841 (Miss. 1983) . Therefore, the issue of the effectiveness of the attorney for Swington is properly before us.

¶22. To establish a claim for ineffective assistance of counsel, a party must show (1) a deficiency of counsel's performance that is (2) sufficient to constitute prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Walker v. State*, 703 So. 2d 266, 268 (Miss. 1997). The burden falls upon Swington to prove both prongs of the ***Strickland*** standard. ***McQuarter v. State***, 574 So. 2d 685, 687 (Miss. 1990). We base our decision "as to whether counsel's efforts were effective on the *totality of the circumstances* surrounding each case." ***Id.***

¶23. Mississippi "recognizes a strong but rebuttable presumption that counsel's conduct falls within a broad range of reasonable professional assistance." ***Id.*** We have recognized that in order to overcome this presumption the appellant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Schmitt v. State***, 560 So.2d 148, 154 (Miss. 1990) (quoting *Strickland,* 466 U.S. at 694). There is also a presumption that counsel's decisions are strategic in nature, rather than negligent. *See* ***Handley v. State***, 574 So. 2d 671, 684 (Miss. 1990); ***Leatherwood v. State***, 473 So. 2d 964, 968-69 (Miss. 1985).

¶24. Swington cites numerous errors by his counsel which he alleges led to the prejudicing of the jury which he claims entitles him to a new trial. We address his arguments in the order presented.

> A. *Voluntary admission of prior conviction during opening statement, as well as failure to object when the court allowed the State to go into the prior conviction on cross-examination.*

¶25. As discussed under the second assignment of error above, evidence of Swington's prior conviction was admissible under M.R.E. 404(b). Additionally, the fact that Swington's attorney introduced the evidence herself during opening statement was not error. She obviously made a strategic decision to build credibility for her client by admitting up front the prior conviction. The more effective way to handle the prior conviction may have been to wait and introduce it on direct examination of Swington after a motion to suppress had been denied; however, the presumption is in favor of Swington's attorney that her decision to

introduce the prior conviction in her opening statement was strategic in nature, rather than negligent. ***Schmitt v. State***, 560 So. 2d 148, 154 (Miss. 1990). We find the introduction of the conviction during opening statement, and therefore any subsequent mention of the prior conviction by either party, did not constitute prejudice to Swington's defense.

> *B. Failure to object to the State's reference to the prior conviction as substantive evidence in closing argument.*

¶26. Having found that the prior conviction was admissible to show intent, this Court finds that there was no error in Swington's attorney's failure to object to the prior conviction being mentioned as showing intent in the State's closing argument.

> *C. Swington's counsel failed to request a continuance when presented with previously undiscovered evidence.*

¶27. As previously discussed, ***Box v. State***, 437 So. 2d 19 (Miss. 1983), governs trial procedure regarding violations of discovery. "When faced with previously undisclosed evidence to which the defendant has objected, the trial court should give the defendant a reasonable opportunity to familiarize himself with the evidence. If the defendant thereafter believes he may be prejudiced by admission of the evidence because of his lack of opportunity to prepare to meet it, he must request a continuance. Should the defendant fail to request a continuance, he has waived the issue. If he indeed requests a continuance, the state may opt to proceed without the undisclosed evidence, else the trial court must grant the continuance. Failure to follow the ***Box*** guidelines is prejudicial error, requiring reversal and remand." ***Duplantis v. State***, 644 So. 2d 1235, 1249-50 (Miss. 1994) (citations omitted).

¶28. Swington's attorney was deficient in not requesting an opportunity to interview the witness again, which meets the first prong of ***Strickland***. However, in order to rebut the presumption that his attorney was constitutionally effective, Swington must show that, but for his counsel's ineffectiveness, the outcome of the trial would have been different.

¶29. The evidence admitted was offered to show intent. The prosecution presented additional evidence of intent through the introduction of the prior conviction for the sale of cocaine. Absent evidence of the prior sale, the jury still had enough evidence to find as they did. The jury could find intent to commit the crime from Swington's prior conviction; the jury heard the oral testimony of Antron Reed that Swington supplied him with the contraband; and, the jury heard evidence from the officers that they found cocaine under the newspaper on the table where Swington sat alone.

¶30. Additionally, the evidence would have been admissible after an interview or continuance, and although Swington's attorney could have questioned Reed regarding the prior sale, to do so would not have affected the outcome of the trial whatsoever as the testimony would have been admitted anyway. This error on the part of Swington's attorney was not sufficiently prejudicial to warrant reversal.

> *D. Swington's counsel did not engage the key witness for the State in any meaningful cross-examination.*

¶31. Swington asserts that because his attorney failed to engage the State's key witness, Antron Reed, in any meaningful cross-examination, he was sufficiently prejudiced to justify reversal. However, he fails to inform this Court as to how he was prejudiced. He asserts that the counsel "did not press [Reed] on cross

seeking to elicit from him that his mind was clouded that night and his recollection could easily be clouded by the cocaine." However, his counsel did illuminate this fact in closing by stating the following:

> The police officers who did not see anything transpire between Mr. Swington and Mr. Reed, and Mr. Reed an unreliable crack addict who testified that he couldn't tell us the correct location where all of this supposedly transpired, where the sale to the officers transpired. And he also testified that Mr. Swington had three rocks of cocaine. One that was sold to someone else 30 minutes prior to the sale to Officer Hicks. A second one that he smoked. And a third one that he sold to Officer Hicks. Now that's three right there. That wouldn't leave any to be on a table in front of Mr. Swington. Mr. Reed is likely to say anything to stay out of jail and out of trouble and he has ever[y] reason to lie about my client.

¶32. Swington claims that although "Reed admitted on direct that he continued to use cocaine post-arrest until three days prior to trial" counsel failed to bring this out on cross examination. However, we find that his failure to have Reed restate that which he stated on direct is not cause for reversal. Finally, the fact that counsel did not question Reed regarding his testimony that he had previously sold counterfeit drugs to law enforcement officers cannot be said to have prejudiced him. In short, due to the fact that the State clearly portrayed Reed as an admitted cocaine addict who ". . . really doesn't have it together up here . . ." there was no error in the failure of Swington's council to elicit this testimony from him again on cross-examination.

> *E. Counsel for Swington allowed hearsay testimony by Agents Hicks and Allen that Reed acquired the cocaine from Swington.*

¶33. Agent Kenneth Hicks testified as follows:

> Q. Okay. Now why did you end up going into the café?

> A. Because at that time when we got Mr. Reed, he indicated that he had gotten the alleged narcotics out of Lumpkin's Café, and that he had got it from Mr. Swington, and that it was in the café on the table under some newspaper where he was sitting.

¶34. Agent Erik Allen testified as follows:

> At that time, knowing who he was, and he and I knew each other, began to talk to him and I asked him where he had gotten the cocaine from, because I knew he wasn't what we would call a seller. He's what we call a runner. He's a crack head who runs for people who actually sell hoping to get a piece so he could have something to get high. He then informed me that he had gotten the cocaine from Jerry Lewis Swington. He further informed me that Jerry Lewis Swington would be sitting in Lumpkin's Café at a table. And that on this table would be a newspaper, and that under this newspaper would be the cocaine that he had gotten to sell to Agent Hicks.

¶35. The testimony elicited was improper hearsay; however, reversal is not the proper result "unless a substantial right of the party is affected...." M.R.E. 103(a). Case law has long held that, in order to be reversible error, such evidentiary rulings must have had the effect of denying the defendant a fundamentally fair trial. *Peterson v. State*, 671 So.2d 647, 656 (Miss.1996). The testimony elicited showed that Reed got the narcotics (1)from Jerry Swington (2) who was sitting in Lumpkin's Café (3) with a newspaper on the table in front of him (4) with some crack cocaine on the table beneath the newspaper.

¶36. Reed testified on direct examination that the officers asked him for some drugs and in response to their request he "went to Mrs. Josie's Café and asked Jerry did he have one, and I picked it up off the table and took it down there and gave it to the dude in the van." He testified further that "[Swington] moved a newspaper that it was up under, newspaper moved it, and showed it." Reed's testimony covered all that was previously introduced through the officer's improper hearsay testimony. The hearsay evidence admitted constituted cumulative evidence and therefore, did not have the effect of denying Swington a fair trial as the testimony was elicited from Reed anyway. As such, counsel's failure to object to the admission of the hearsay testimony did not constitute a deficiency of performance sufficient to prejudice Swington's defense.

> *F. Counsel for Swington never questioned the whereabouts of the rock of cocaine Reed sold to Agent Hicks. No money was found on Swington, nor any other implements of a cocaine dealer, yet counsel never mentioned those facts in this "possession with intent to sell" case.*

¶37. Swington argues that by failing to question the whereabouts of the cocaine Reed sold to Agent Hicks, and by failing to introduce the fact that no money or any other "implements" of a cocaine dealer were found on Swington he was denied effective assistance of counsel. However, he does not explain why those failures constitute ineffective assistance of counsel.

¶38. The State astutely argued that "[a]lthough presence of drug paraphernalia and money have been noted by the Court, under the facts of other cases, to be corroborative evidence of possession with intent, as they help to corroborate the intent element, the lack thereof certainly does not indicate that the defendant is not guilty of the crime." While the mention of the lack of such evidence may have been appropriate, it cannot be said that there is a reasonable probability that, but for counsel's failure to note the absence of such evidence the result of the proceeding would have been different. We find that the failure to mention the lack of evidence of drug paraphernalia and money was not sufficient to constitute prejudice to the defense, and therefore Swington's argument as to this error fails.

> *G. Counsel never requested an accomplice instruction directing the jury to view Reed's testimony with caution and suspicion.*

¶39. Swington alleges that his counsel was ineffective in not requesting an accomplice instruction directing the jury to view Reed's testimony with caution and suspicion. This Court has previously addressed this argument in **Martin v. State**, 609 So. 2d 435, 440 (Miss. 1992), wherein we held that "[w]hile it is true that, if requested, such an instruction would no doubt have been given, the failure to request the instruction does not rise to the level of ineffectiveness." The Court found that this is particularly true where evidence is presented attacking the credibility of the witness. **Id.** We find ample evidence in the record impeaching the credibility of Reed; and therefore, no instruction was needed. This assignment of error is without merit.

> *I. Counsel had Swington demonstrate that he could knock a paper ball off of a table, destroying any value his quadriplegia may have had to his defense.*

¶40. Swington alleges that his trial counsel was deficient in demonstrating for the jury his level of quadriplegia. During direct examination of Swington, his attorney noted that there was controversy during the trial concerning the level of his quadriplegia. She asked him if he could pick up a paper ball in front of him. He replied that he could knock it off the table and proceeded to demonstrate the action.

¶41. On appeal, Swington alleges that the demonstration "destroyed what value his quadriplegia may have

had to his defense." As such, he asserts that his counsel was constitutionally deficient in requesting that he perform the demonstration.

¶42. Once again, there is a presumption that counsel's decisions are strategic in nature, rather than negligent. *See* **Handley v. State**, 574 So. 2d 671, 684 (Miss. 1990); **Leatherwood v. State**, 473 So. 2d 964, 968-69 (Miss. 1985). Her subsequent argument establishes that she was using the demonstration to show that he could not have picked up the drugs. Apparently, she made this argument to show that he could not have placed them on the table either. The employment of this trial strategy did not prejudice Swington's defense.

> *J. Counsel stipulated after the verdict that the sale was within 1,500 feet of a church when same was a substantive amendment to the indictment.*

¶43. Swington's allegation that he was denied effective assistance of counsel due to his attorney's stipulation that the sale occurred within 1,500 feet of a church is without merit. The prosecution filed a motion to amend the indictment five days prior to trial, on March 5, 1997. On March 12, 1997, during the hearing to amend the indictment, Swington's attorney stipulated to the fact that the site where the sale took place actually was within 1,500 feet of Flowery Mount Baptist Church, as she had visited the site herself and determined the same. Without arguing, Swington asserts that "[c]ounsel stipulated after the verdict that the sale was within 1,500 feet of a church when same was a substantive amendment to the indictment."

¶44. This Court held in **Griffin v. State**, 540 So. 2d 17, 21 (Miss. 1989) (quoting **Reed v. State**, 506 So. 2d 277 (Miss. 1987)) that "[t]he test of whether an accused is prejudiced by the amendment of an indictment or information has been said to be whether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence [the] accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance." The plain language of URCCC 7.09, concerning amendment of indictments, makes it readily apparent that prior offenses used to charge the defendant as an habitual offender are not substantive elements of the offense charged. URCCC 7.09 reads as follows:

> All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss. Code Ann. § 63-11-30). Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.

¶45. Just as those enhancement statutes are not substantive elements of the offense charged, we find that the statutes enhancing the penalty for the sale of cocaine within 1,500 feet of a church are not substantive amendments. Swington's argument to the contrary is without merit. Additionally, without arguing that the church was not within 1,500 feet from the sale, Swington does not show how it was error to stipulate as such.

¶46. Based upon the totality of the circumstances surrounding this case, we find that the alleged errors of defense counsel would not have affected the outcome of this case. The argument that Swington's attorney was so deficient in performance as to constitute prejudice to Swington's defense fails.

## V. DID THE LOWER COURT ERR IN DENYING SWINGTON'S PEREMPTORY INSTRUCTION?

¶47. In his final assignment of error, Jerry Swington argues that the evidence was not sufficient to sustain a conviction of unlawful possession of cocaine with intent to distribute. He argues that no proof was offered by the State, other than "the uncorroborated word of a crack addict", to establish his physical possession or intent to distribute.

¶48. In determining whether the evidence is sufficient to support the jury verdict, this Court reviews the evidence in the light most favorable to the State. *McClain v. State*, 625 So.2d 774, 778 (Miss. 1993). All credible evidence which is consistent with Swington's guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence. *Id.* Because matters concerning the weight and credibility of the witnesses are resolved by the fact finder, this Court will reverse only where, "with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Id.*

### A. Intent to Distribute

¶49. Swington argues that there was no evidence of intent to distribute other than that of Reed, an admitted cocaine addict. He argues that the amount of cocaine introduced as evidence in the case, one rock of crack cocaine, was insufficient to establish intent to distribute.

¶50. This Court has held that "intent is a question of fact to be gleaned by the jury from the facts shown in each case." *Boyd v. State*, 634 So. 2d 113, 115 (Miss. 1994). In the present case there was direct evidence of intent provided through the testimony of Antron Reed. It was the function of the jury to pass upon the credibility of Reed. Since there was ample evidence, which if believed by the jury, justified the verdict, the verdict will not be disturbed on appeal. *See Murphree v. State*, 228 So.2d 599, 661 (Miss.1969).

### B. Constructive Possession

¶51. "The doctrine of constructive possession is a legal fiction used by courts when actual possession cannot be proven." *Fultz v. State*, 689 So.2d 690 (Miss. 1990). "Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances." *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971).

¶52. When the police officers found the rock of cocaine, it was underneath a newspaper on the table where Swington was sitting in his wheelchair. Although the officers testified that there was no one near Swington when they entered the café, Swington argues that the fact that the newspaper covered the cocaine is "inapposite to the State's theory that Swington was in possession of it beyond a reasonable doubt."

¶53. The evidence is clear, through the testimony of Reed and the officers, that Swington was in possession of the cocaine. Reed testified that the cocaine belonged to Swington. The officers testified that upon being told by Reed the location of the drugs, they entered Lumpkin's Cafe, and the drugs were exactly where Reed had indicated they would be.

¶54. Considering all of the evidence adduced at trial in the light most consistent with the verdict, and giving

the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence, we find sufficient evidence to support both the finding of intent to distribute and constructive possession. Therefore, this issue is without merit.

## CONCLUSION

¶55. Finding no merit to the arguments presented by Swington, we affirm the judgment of the Pike County Circuit Court.

¶56. **CONVICTION OF UNLAWFUL POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AS AN HABITUAL OFFENDER AND SENTENCE OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE BENEFIT OF REDUCTION, SUSPENSION, PROBATION OR PAROLE AND PAYMENT OF A FINE OF $100,000, ATTORNEY FEES AND COURT COSTS AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., SMITH, WALLER AND COBB, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J.**

**BANKS, JUSTICE, DISSENTING:**

¶57. Because I believe that the representation received by the defendant was ineffective, I dissent.

¶58. Swington was represented by counsel not yet admitted to practice a full year. A number of clear errors were made, and the record as a whole bespeaks ineffective assistance. The majority excuses that ineffectiveness on grounds that the objections which Swington asserts should have made were not well taken. I disagree.

I.

¶59. For example, I do not agree that admission of the prior conviction would pass muster under M.R.E. 403 or 404(b). Nevertheless, counsel waived the issue by bringing it up herself in opening argument and then by further opening the door on direct examination of her client, apparently intending to defend against both the earlier conviction and the current charge. Finally, she stood silently while the court and the prosecution attorney discussed the admissibility of the evidence.

¶60. M.R.E. 404(b) allows the admissibility of prior convictions as proof of, among other things, intent. That evidence must, however, also pass through the filter of Rule 403, which excludes evidence if its probative value is substantially outweighed by unfair prejudice. M.R.E. 403. In my view, Swington's 1990 conviction for the sale of cocaine is not admissible as proof of intent for the alleged 1997 possession. The majority relies on *Smith v. State*, 656 So. 2d 95 (Miss. 1995), for the proposition that the prior conviction in the present case was properly admitted. In *Smith*, however, this Court questioned the ruling of the trial

court that convictions two years prior to the incident in question outweighed any prejudicial effect. *Smith*, 656 So. 2d at 99. The Court deemed the conclusion was "somewhat dubious." *Id*. We did not conclude that the admission of the prior conviction in that instance was without error, but rather, chose not to address the issue on appeal because we reversed and rendered the conviction as to possession. We concluded that even if the prior conviction were admissible it was insufficient standing alone to allow a fair- minded jury to find the requisite intent. *Id.* at 100.

¶61. Contrary to the majority, I do not believe that the conviction here in question, seven years prior, is of sufficient probative value to overcome its prejudicial effect. In my view, but for the failure of Swington's counsel to object, the prior conviction was improperly admitted and was reversible error. *See [Townsend v. State, 681 So. 2d 497, 505-07 (Miss. 1996)](#)*; *Ballenger v. State*, 667 So. 2d 1242, 1256-57 (Miss. 1995).

¶62. The trial court in this instance barely went through the motions of a Rule 403 weighing process. Relying in part upon the waiver which he found to have been made in opening statement and the fact that on direct examination counsel had elicited a catch-all statement from Swington that he had never sold cocaine, the trial court simply opined that seven years was not too remote. None of the *Peterson* factors were discussed. *Peterson v. State*, 518 So. 2d 632 (Miss. 1987). These factors include the impeachment value of the prior crime; the point in time of the conviction and the witness' subsequent history; the similarity between the past crimes and the charged crime; the importance of the defendant's testimony and the centrality of the credibility issue. *See Peterson*, 518 So. 2d at 637. This is so, even though the trial court also opined that the evidence was admissible under M.R.E. 608.

¶63. The fact is that seven years is too remote for the use of evidence as prejudicial as a similar occurrence on the issue of intent. *See People v. Formato*, 143 N.Y.S.2d 205, 214-16 (N.Y. App. Div. 1955), *Aff'd Mem.*, 132 N.W. 2d 894 (N.Y. 1956); *Plante v. State*, 692 S.W.2d 487, 495 (Tex. Crim. App. 1985). Additionally, the similarity between this conviction and the conduct charged is sufficient to deny its admission under Rule 608.

II.

¶64. It follows that the ineffective assistance of counsel claim must be examined more closely. Clearly, counsel should have secured a ruling on the admissibility of the prior offense before wading off into it on her own. A correct ruling would have precluded that evidence in my view. The majority also excuses counsel's failure to handle properly the newly disclosed evidence, partially, because, in its view the prior conviction evidence was at least permissible in aid of the conclusion that there was possession with intent.

¶65. Of course, any inference that may be read into the majority opinion, where it examines the effect of the admission of the other prior sale in this case with respect to ineffective assistance of counsel, that the prior conviction is sufficient standing alone is directly contrary to our holding in *Smith v. State*. Maj. Op. ante p. 14. A prior conviction is not sufficient proof of intent standing alone to warrant conviction. *Smith v. State*, 656 So. 2d at 100-01. I agree with the majority, however, that Reed's testimony and the circumstances under which Swington was found with the substance were sufficient evidence for conviction. More important, given our standard of review, is the question whether the testimony concerning the prior sale was such as to have a significant impact upon the verdict of the jury. In other words, the error was harmless if at all, not because other evidence was sufficient, but because, in light of the other evidence, when compared to the weight and potential for unfair prejudice of the questionable evidence, we can say beyond a reasonable

doubt that the use of the questionable evidence did not make a difference. *See Clemons v. State*, 593 So. 2d 1004, 1006-07 (Miss. 1992); *Holmes v. State*, 537 So. 2d 882, 884 (Miss. 1988). It follows that counsel was not constitutionally deficient for the failure to have sought a continuance on this account.

¶66. While the failure to follow the guidelines first announced in *Box v. State*, 437 So. 2d 19-22 (Miss. 1983) (Robertson, J., specially concurring), may not have been sufficient standing alone, after all, it was only more testimony from the same addicted witness, that transgression together with the handling of the prior conviction leads to the conclusion that counsel's performance overall was constitutionally defective to the point that we cannot say with confidence that the same result would have obtained but for counsel's ineffectiveness. There were other failings, none of which would lead to reversal individually, but which collectively demonstrate overall ineffectiveness.[1]

¶67. I would reverse this conviction for ineffective assistance of counsel and remand for a new trial. *See Stewart v. State*, 229 So. 2d 53, 56-57 (Miss. 1969).

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

1. Counsel failed to engage Reed in any meaningful cross-examination nor did she request that an accomplice instruction be submitted to the jury to review Reed's testimony with caution and suspicion. Counsel also failed to impeach Reed as to his drug use during the time of the sale or his subsequent usage, allowed the door to be opened as to evidence of the prior conviction herself, and failed to make numerous necessary objections.